**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**SULZER MIXPAC AG,**

                                              **COMPLAINT**

                   **Plaintiff,**

       **-against-**

                                      **TRIAL BY JURY DEMAND**

**PAC-DENT INTERNATIONAL, INC.,**
**PAC-DENT, INC., and DANIEL Y. WANG,**

                           **Defendants.**
-------------------------------------------------------------X

     Plaintiff Sulzer Mixpac AG ("Mixpac" or "Plaintiff") submits this complaint against defendants Pac-Dent International, Inc., Pac-Dent, Inc., and Daniel Y. Wang (collectively, "PacDent" or "Defendants") to enforce a Consent Judgment and Permanent Injunction and Settlement Agreement, and to seek damages, injunctive, and other relief for trademark counterfeiting, trademark infringement, false advertising, patent infringement, and related claims.

## INTRODUCTION

     In 2010, Sulzer Mixpac sued PacDent for copying its mixing tips. In 2011, PacDent accepted and the Court entered a Consent Judgment and Permanent Injunction ("Injunction") that confirmed infringement and forbid PacDent from infringing Mixpac's Colored Dome Mark and Mixpac Trade Dress. Undeterred, PacDent has introduced new mixing tips that violate the 2011 Injunction, and again infringe Mixpac's Colored Dome Mark and Mixpac Trade Dress. The new iMix™ Grip™ mixing tips also infringe Mixpac's U.S. Patent No. 6,135,631. To launch sales of its new mixing tips, PacDent has used false advertising including a misleading "legal analysis" hoping to convince customers to buy by assuring that its new mixing tips do not infringe. Accordingly, Plaintiff alleges as follows:

1

## PARTIES

1.       Plaintiff Sulzer Mixpac AG is a Swiss corporation with its principal place of business at Rütistrasse 7, CH-9469 Haag, Switzerland.

2.       Defendant Pac-Dent International, Inc., is a California corporation having a registered business address of 670 Endeavor Circle, Brea, California 92821. Defendant is bound by the Settlement and Consent Judgment and Permanent Injunction.

3.       Defendant Pac-Dent, Inc., is a California corporation having a registered business address of 670 Endeavor Circle, Brea, California 92821. Defendant is bound by the Settlement and Consent Judgment and Permanent Injunction.

4.       Defendant Daniel Y. Wang is an individual with a business address of 670 Endeavor Circle, Brea, California 92821. Mr. Wang is bound by the Settlement and Consent Judgment and Permanent Injunction and directs and controls the conduct accused herein by himself and the other Defendants.

5.       Defendants (collectively, will hereafter be referred to as "PacDent").

## JURISDICTION AND VENUE

6.       This court has subject matter jurisdiction over Mixpac's trademark counterfeiting, trademark infringement, false advertising, and patent infringement claims under 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121, and 35 U.S.C. § 271 et al.

7.       This court has personal jurisdiction over Defendants because they have agreed to a Settlement Agreement on March 15, 2011 and to entry of a Consent Judgment and Permanent Injunction entered on May 10, 2011 in *Sulzer Mixpac et al. v. Pure-Life Gloves, LLC*, Case No. 09 Civ. 10430 ("Consent Judgment"). The Consent Judgment and the March 15, 2011

Transcript of Civil Cause for Settlement Conference ("Settlement Agreement") are attached hereto as Exhibit A and Exhibit B, respectively.

8.      This court has personal jurisdiction over Defendants because Defendants have also transacted and are transacting business in this district and have sold, offered for sale, distributed, or advertised dental mixing tips that infringe Mixpac's registered and common-law trademarks and have committed acts of false advertising in this judicial district. Defendants also have made, used, imported, sold, or offered for sale in the United States, including within this judicial district, dental mixing tips which infringe Mixpac's registered trademarks, specifically U.S. Trademark Registration Reg. No. 3,762,232 (yellow), Reg. No. 3,762,233 (teal), Reg. No. 3,976,379 (blue), Reg. No. 3,976,380 (pink), Reg. No. 3,976,381 (purple), Reg. No. 3,976,382 (brown), and Reg. No. 4,051,261 (dome shape only – no color). Defendants have substantial and continuous contacts with New York and have committed acts of infringement in New York, including the Southern District of New York, sufficient to confer personal jurisdiction upon them. Specifically, Defendants have offered for sale infringing mixing tips to customers or potential customers during the 2015 Greater New York Dental Meeting on or about November 29, 2015 and have shipped infringing mixing tips into the Southern District of New York. See copies of Defendants' website advertising attached as Exhibit C1, Defendants' Legal Analysis attached as Exhibit C2 ("PacDent Legal Analysis"), Defendants' packaging inserts attached as Exhibit C3, additional portions of Defendants' advertising attached as Exhibit C4, Defendants' product advertising attached as Exhibit D, and images of Defendants' products attached as Exhibit E.

9.      This court has personal jurisdiction over Defendants because Defendants have also transacted and are transacting business in this district and have made, used, imported,

sold, or offered for sale in the United States, including within this judicial district, products which infringe Mixpac's U.S. Patent No. 6,135,631. Defendants have substantial and continuous contacts with New York and have committed acts of infringement in New York, including the Southern District of New York, sufficient to confer personal jurisdiction upon them. Specifically, Defendants have offered for sale infringing mixing tips to customers or potential customers during at least the 2015 Greater New York Dental Meeting on or about November 29, 2015.

10.    This court also has personal jurisdiction over Defendants because they regularly transact business in this district. Defendants' activities are continuous and systematic. Defendants have for many years appeared in New York as an exhibitor during the annual Greater New York Dental Meetings ("GNYDM"). The GNYDM is a key trade show for the dental industry where new products are introduced and purchase commitments are made. Defendants manufacture and offer for sale products that are sold in this district. Defendants regularly import dental products into this district and deliver to customers in this district. See Exhibits C1, C2, C3, C4, D, and E.

**BACKGROUND**

**The MIXPAC Three-Part Mixing System**

11.    Mixpac is the exclusive manufacturer of its proprietary three-part system for mixing two-part adhesives for dental applications. The system consists of 1) a dispenser-like caulking gun, 2) a cartridge containing a two-part chemical such as an epoxy having a catalyst and a resin, and 3) a mixing tip that mixes the chemicals before they are applied for making, for example, an impression or mold for teeth. Mixpac manufactures all of its products in Switzerland under rigorous quality controls.

**The Registered Mixing Tips' Colored Dome Mark and Mixpac Trade Dress**

12. Mixpac has since at least as early as 1997 used distinctive colors and shape design trademarks for its mixing tips (hereinafter "Colored Dome Mark and Mixpac Trade Dress").

13. The Colored Dome Mark and Mixpac Trade Dress have been used for many years to identify Mixpac's dental mixing system and tips.

14. Mixpac's Colored Dome Mark and Mixpac Trade Dress includes six pleasing "candy-like" colors of yellow, teal, blue, pink, purple, and brown ("Candy Colors") used with the products to indicate Mixpac as the source.

15. The Colored Dome Mark and Mixpac Trade Dress are non-functional. They are not essential to the product's purpose, and they are not dictated by concern for cost efficiency. This is evidenced by other companies in the industry that use different designs and colors, or no colors, for their dental products, none of which include the features of the Colored Dome Mark and Mixpac Trade Dress.

16. The Colored Dome Mark and Mixpac Trade Dress are distinctive and identify a single source. Additionally, for more than eighteen years the Colored Dome Mark and Mixpac Trade Dress have acquired secondary meaning as the relevant public has come to associate the Colored Dome Mark and Mixpac Trade Dress with a single source - Mixpac. Mixpac informs the dental public to "Look For" the Colored Dome Mark and Mixpac Trade Dress and informs that the Candy Colors are trademarks. Purchasers choose mixing tips based on the Colored Dome Mark and Mixpac Trade Dress.

**Mixpac's U.S. Trademark Registrations and Advertising for
Colored Dome Mark and Mixpac Trade Dress**

17.    Mixpac owns U.S. Trademark Registrations for the Colored Dome Mark and Mixpac Trade Dress: U.S. Trademark Reg. No. 3,762,232 (yellow), Reg. No. 3,762,233 and (teal), Reg. No. 3,976,379 (blue), Reg. No. 3,976,380 (pink), Reg. No. 3,976,381 (purple), Reg. No. 3,976,382 (brown) ("the Colored Dome Trademark Registrations"), and Reg. No. 4,051,261 (dome shape - no color). Copies of the registration certificates are attached as Exhibit F. Mixpac's trademark registrations are prima facie evidence of the validity of the marks and registration of the marks, and Mixpac's exclusive right to use the marks in connection with mixing tips. See below.

| Reg. No. | 3976380 | 3976382 | 3976379 | 3976381 | 3762232 | 3762233 | 4051261 |
|---|---|---|---|---|---|---|---|
| **Mark** |  |  |  |  |  |  |  |

18.    In addition, Mixpac also owns additional U.S. Trademark Registrations for the Mixpac Trade Dress in the Candy Colors without claim to the Dome: U.S. Trademark Reg. No. 4,674,109 (yellow), Reg. No. 4,879,515 (teal), Reg. No. 4,879,519 (blue), Reg. No. 4,879,517 (pink), Reg. No. 4,879,518 (purple), and Reg. No. 4,879,516 (brown). Registration Certificates are attached as Exhibit G. Mixpac's additional trademark registrations are further prima facie evidence of the validity of the marks and registration of the marks, and Mixpac's exclusive right to use the marks in connection with mixing tips. See below.

6

| Reg. No. | 4674109 | 4879517 | 4879516 | 4879519 | 4879518 | 4879515 |
|----------|---------|---------|---------|---------|---------|---------|
| **Mark** | | | | | | |

19.     Mixpac has spent significant amounts of money in advertising the Colored Dome Mark and Mixpac Trade Dress. Since 2010, Mixpac has spent hundreds of thousands of dollars in advertising featuring the Colored Dome Mark and Mixpac Trade Dress in the United States alone. Nearly all of Mixpac's advertising uses the Candy Colors. For many years, Mixpac has informed the market through its "Look For" campaign message using a quality seal highlighting the distinctive shape and Candy Colors of Mixpac's products.



LOOK FOR IT! Seal

See Sulzer Mixpac Look For Advertising, attached as Exhibit H. Mixpac has spent significant sums in delivering the "Look for It" campaign to reinforce that Mixpac is the sole source for its distinctive mixing tips and that the Candy Colors are Mixpac trademarks.

20.     Mixpac also owns U.S. Trademark Reg. No. 4,059,599 for MIXPAC. See Exhibit G1.

21.     Mixpac has communicated its rights in the Colored Dome Mark and Mixpac Trade Dress through a variety of media and methods including: advertisements in publications, website advertising, social media including Facebook, advertisements and giveaways during dental industry trade shows such as the annual Greater New York Dental Meeting (GNYDM). See image of Sulzer Mixpac booth at GNYDM, attached hereto as Exhibit I.

**Consent Judgment and Permanent Injunction against PacDent Defendants**

22.     In 2010, PacDent sold infringing copies of the Mixpac mixing tips, Sulzer Mixpac sued PacDent, the Parties entered into a settlement agreement on March 15, 2013, and the court later entered a Consent Judgment and Permanent Injunction on May 10, 2011 - *Sulzer Mixpac et al. v. Pure-Life Gloves, LLC*, Case No. 09 Civ. 10430 (May 10, 2011). See Exhibits A-B. The May 10, 2011 Consent Judgment and Permanent Injunction enjoined PacDent from, among other things:

> Making, using, importing, selling and/or offering for sale in the United States any mixing tips that infringe any claim of U.S. Patent Nos. 5,918,772 or 6,186,363; and from making, using, importing, selling and/or offering for sale dental mixing tips in any other countries in which Plaintiffs own corresponding patents, currently Switzerland, Germany, Spain, France, Great Britain, Italy and Japan;

> Selling, offering for sale, distributing or advertising in the United States any mixing tips that infringe U.S. Trademark Registration Nos. 3,762,233 or 3,762,232 or the Colored Dome Mark or Mixpac Trade Dress, and in any other countries in which Plaintiffs own trademark registrations for the Colored Dome Mark or Mixpac Trade Dress, and of which there are currently no additional countries.

See Exhibit A. The patents referred to in the Consent Judgment have since expired, but Mixpac's Colored Dome Mark and Mixpac Trade Dress Marks and related trademark registrations remain fully enforceable.

**Defendants' Counterfeit Mixing Tips**

23.     In violation of the March 15, 2011 Settlement Agreement and the May 10, 2011 Consent Judgment and Permanent Injunction, PacDent has recently offered new versions of infringing mixing tips.

24.     PacDent has offered or is offering mixing tips that infringe the Colored Dome Mark and Mixpac Trade Dress Marks.

25.     PacDent has offered or is offering the iMix® Crystal Colors Mixing Tips, as shown below:



See Exhibit D. PacDent gave new color names to its mixing tips, but copied the Mixpac Colored Dome and Mixpac Trade Dress.

26.     PacDent has offered or is offering the iMix® Grip™ Mixing Tips, as shown below:



See Exhibits C1, C2, C3, C4, D and E. PacDent copied the Mixpac Colored Dome and Mixpac

Trade Dress and the Candy Colors. Defendants' description of these infringing tips also includes

a false or misleading statement that:

> All iMix® Grip™ mixers are 100% compatible with end-user's existing
> cartridges, and do not infringe on any patents or trademarks, because they are
> designed and manufactured exclusively by Pac-Dent.

See Exhibit C2.

27.    PacDent has offered or is offering the iMix® Alloy Hues™ Mixing Tips,

as shown below:



See Exhibit D. PacDent gave new color names to its mixing tips, but copied the Mixpac Colored

Dome and Mixpac Trade Dress.

28.    PacDent also filed U.S. trademark applications for their infringing mixing

tips. See below:

10

| App. No. | 86593915 | 86593841 | 86593811 | 86593793 | 86593755 | 86593880 | 86588603 |
|----------|----------|----------|----------|----------|----------|----------|----------|
| **Designs** |  |  |  |  |  |  |  |

29.    The United States Patent and Trademark Office rejected all seven of PacDent's trademark applications based on Mixpac's Colored Dome Trademark Registrations. See September 2015 Office Actions rejecting registration based on likelihood of confusion with Mixpac's trademark registrations, attached as Exhibit J.

30.    PacDent has capitalized, and continues to capitalize, on the success of the Mixpac mixing tips by copying the distinctive Colored Dome Mark and Mixpac Trade Dress, to intentionally confuse purchasers into believing PacDent's counterfeit products ("Counterfeit Mixing Tips") are manufactured or licensed by Mixpac.

31.    PacDent has copied the distinctive Colored Dome Mark and Mixpac Trade Dress. See images of PacDent's infringing mixing tips, attached hereto as Exhibit D.

32.    PacDent also uses Mixpac's Candy Colors trademarks throughout PacDent's packaging inserts provided with its infringing products. See Exhibit C3, true and correct copies of packaging inserts provided with PacDent's mixing tips. Mixpac's Candy Colors trademarks and images of Mixpac's Colored Dome Marks dominate PacDent's advertising inserts, and with the intent to cause confusion or deceive consumers as to a possible affiliation, connection or association of PacDent's infringing products with Mixpac. Without limitation, PacDent uses the MIXPAC® wordmark thirteen times compared to its own mark iMIX® only eight times.

11

33.     Defendants' mixing tips are counterfeit as they are spurious and are identical with or substantially indistinguishable from Mixpac's Colored Dome Mark and Mixpac Trade Dress as shown in Mixpac's trademark registrations.

**This Court Has Entered Several Restraining Orders, Consent or Default Judgments, and Injunctions Which Confirm the Validity and Infringement of Plaintiff's Colored Dome Mark and Mixpac Trade Dress and Candy Colors**

34.     In *Sulzer Mixpac v. TPC Advanced Technologies, Inc.*, 08 Civ. 10364 (DC), this Court first entered a temporary restraining order against infringement of the Colored Dome Mark and Mixpac Trade Dress on December 1, 2008, and the Court later entered numerous consent or default judgments which confirm the validity and infringement of the Colored Dome Mark and Mixpac Trade Dress.

35.     On November 30, 2009 in *Sulzer Mixpac v. Ritter GmbH, NSJ and Peng Waves*, 09 Civ. 9705 (DAB) the Court issued a TRO, followed by the issuance of a preliminary injunction on December 14, 2009, and later a default judgment confirming the validity and infringement of Mixpac's Colored Dome Mark and Mixpac Trade Dress.

36.     In *Sulzer Mixpac USA v. Purelife Gloves, LLC*, 09 Civ. 10430 (DAB) and *Sulzer Mixpac USA v. Crown Dentalsply et al.*, 10 Civ. 8911 (DAB), the Court entered consent judgments further confirming the validity and infringement of the Colored Dome Mark and Mixpac Trade Dress on May 10, 2011 and April 21, 2011, respectively.

37.     Further, in *Sulzer Mixpac USA v. Rainbow Specialty & Health Products (USA) et al.*, 12 Civ. 6970 (RJS), *Sulzer Mixpac USA v. UC Dental Products, Inc. dba Happystone Dental Supply* 12 Civ. 7863 (LTS), and *Sulzer Mixpac USA v. Spident USA, Inc. and Spident Co., Ltd. et al.*, 12 Civ. 8563 (PAC), *Sulzer Mixpac USA, Inc. et al. v. CDPC, Inc. dba UC Dental et al.*, 14 Civ. 8075 (ALC), and *Sulzer Mixpac AG, v. Sunrise Dental Supplies LLC,*

*et al.*, 15 Civ. 9359 (ER), the court entered consent judgments confirming the validity and infringement of the Colored Dome Mark and Mixpac Trade Dress.

## PacDent's False Advertising Strategy

38.     PacDent has engaged in false and misleading advertising to launch sales of PacDent's new infringing mixing tips.

39.     PacDent competes directly with Mixpac and it is likely that PacDent's false advertising will improperly convince customers and prospective customers into buying PacDent's infringing products instead of Mixpac's genuine products.

40.     Mixpac has for many years enforced its intellectual property rights in its mixing tips and the dental trade press has reported on such enforcement. As a result, customers are aware of Mixpac's intellectual property rights.

41.     PacDent learned that it was unable to convince customers to buy its new mixing tips because customers were aware of Mixpac's intellectual property rights. PacDent then devised a strategy to convince customers that its new mixing tips did not infringe Mixpac's intellectual property rights, to launch sales of its new products.

## PacDent's Website Advertising

42.     PacDent advertises through its website at http://www.pac-dent.com/ ("PacDent Website").

43.     PacDent advertises its mixing tips on the PacDent Website, and the PacDent Website includes at least one false statement.

44.     Specifically, PacDent states that: "All iMix Grip mixers…do not infringe on any patents or trademarks, because they are designed and manufactured exclusively by Pac-Dent [,]" (the "PacDent Statement"). See printout of PacDent's website page, attached as Exhibit C1. Although the PacDent Statement does not mention Mixpac by name, it is obvious that the

statement is aimed at Mixpac. The PacDent Statement is part of advertising that shows a side-by-side comparison of a PacDent infringing mixing tip and a Mixpac mixing tips as the "Leading Brand." See Exhibit C1.

45.     The PacDent Statement is literally false. PacDent's product does infringe Sulzer's patents and trademarks. This statement is a misrepresentation of the quality of PacDent's own goods. Moreover, the reason given for why the iMix® Grip™ mixers do not infringe, "because they are designed and manufactured exclusively by Pac-Dent" is false. Whether PacDent designed or manufactured the products has no bearing on whether the product infringes any patents or trademarks.

46.     At the very least, the PacDent Statement is misleading. The PacDent Statement is calculated to convince customers and influence their purchase decision, and divert sales from Mixpac to PacDent. Not only does the PacDent Statement provide false reasons for PacDent's claim of noninfringement, but it omits highly material information regarding PacDent's new mixing tip products. The PacDent Statement is deceptive or has the capacity to deceive, is material and has injured Mixpac by diverting sales from Mixpac to PacDent and by lessening the goodwill in Mixpac's mixing tips.

47.     Customers and prospective customers in the dental industry research websites for product information. The PacDent Statement is material because it is part of PacDent's product information specifications relied upon by these customers, and this information is likely to deceive customers.

48.     Dental industry customers want to avoid potential product recalls or replacing counterfeit inventory. The PacDent Statement is material and is likely to influence

purchasing decisions. By falsely advertising that PacDent's product does not infringe any patents or trademarks, PacDent seeks to convince dental industry customers to purchase its products.

49.     PacDent placed the PacDent Statement in interstate commerce on PacDent's website and product information page. See Exhibit C1.

50.     Accordingly, the PacDent Statement constitutes false advertising by PacDent.

### PacDent's Intellectual Property Legal Analysis

51.     To further its scheme to convince Mixpac's customers to buy PacDent's new infringing mixing tips, PacDent also distributed a document bearing false and misleading advertising in interstate commerce to key dental industry customers entitled "Sulzer Mixpac Intellectual Property Legal Analysis" (the "PacDent Legal Analysis"). The undated four-page PacDent Legal Analysis is presented on PacDent letterhead, but bears no other signature or identification of the author. See a true and correct copy of the PacDent Legal Analysis, attached as Exhibit C2.

52.     PacDent made false statements of fact in commercial advertising and in other communications to customers including, but not limited to, at the Greater New York Dental Meeting 2015. The PacDent Legal Analysis is specifically focused on Mixpac's intellectual property rights. PacDent says the Legal Analysis is "generated to assess whether the use of [PacDent's] Alloy Hues and iMix mixing tips would infringe any intellectual property rights of Sulzer Mixpac AG." See Exhibit C2.

53.     The PacDent Legal Analysis is calculated to convince customers and influence their purchase decision, and divert sales from Mixpac to PacDent. The PacDent Legal Analysis omits highly material information regarding PacDent's cited rights. The PacDent Legal

Analysis is deceptive or has the capacity to deceive, is material and has injured Mixpac by diverting sales from Mixpac to PacDent and by lessening the goodwill in Mixpac's mixing tips.

54.     To encourage customers to buy the infringing mixing tips, the PacDent Legal Analysis predictably concludes that PacDent's Alloy Hues™ and iMix™ mixing tips would not infringe any intellectual property rights of Sulzer Mixpac AG.

55.     Specifically, PacDent's Legal Analysis states:

a.  "Pac-Dent's new iMix mixing tip consists of the configuration of a mixing tip…. which averted all the key features of Mixpac's mark." See Exhibit C2, at Section 3.2.

b.  "The bottom portion of Pac-Dent's "Alloy Hues" mixing tip is metallic (silver/gunmetal gray) compared to Mixpac's "Candy Colors", therefore, there cannot be any infringement issues regarding Mixpac's trademarks." See Exhibit C2, at Section 4.2.

c.  "With the 110 Patent, Pac-Dent's iMix static/dynamic mixer not only does not infringe on any Mixpac patents, but it also protects Pac-Dent's proprietary design against other manufacturers." See Exhibit C2, at Section 6.4.

d.  "Based on the foregoing reasons summarized in the first through the sixth section of this analysis, it can be concluded that the use of Pac-Dent's "iMix" "Alloy Hues" mixing tips do not infringe on any intellectual property rights of Sulzer Mixpac." See Exhibit C2, at Section 7.

56.     The statements noted above from PacDent's Legal Analysis advertising are each false, or are misleading by omitting several material facts:

a. (1) No Disclosure of Prior Judgment - The PacDent Legal Analysis does not disclose the May 11, 2011 Consent Judgment and Permanent Injunction nor the March 15, 2011 Settlement Agreement that prohibits PacDent from infringing the Mixpac Colored Dome Mark and Mixpac Trade Dress;

b. (2) No Disclosure of USPTO Refusal of PacDent's '603 Application - The PacDent Legal Analysis also does not disclose that the PacDent USPTO trademark application relied upon in the Legal Analysis was *refused* by the USPTO in view of a likelihood of confusion with the Mixpac Colored Dome Mark or Mixpac Trade Dress;

c. (3) No Disclosure of USPTO Refusal of PacDent's Other Mixing Tip Trademark Applications – PacDent fails to disclose that the USPTO *refused* PacDent's other trademark applications based on a likelihood of confusion with the Colored Dome Mark or Mixpac Trade Dress;

d. (4) No Discussion of Mixpac's Full Patent and Trademark Rights in Mixing Tips – PacDent reassures customers of noninfringement yet does not disclose Mixpac's other intellectual property rights. PacDent ignores the '631 Patent and several of Mixpac's additional trademark registrations; and

e. (5) No Disclosure that Ownership of the '110 Patent Does Not Defend Against Other Patents – PacDent falsely states that PacDent's ownership of the '110 Patent avoids infringement of other patents when the existence of PacDent's '110 Patent has no bearing on whether PacDent's new mixing tips infringe Mixpac's '631 or any other patents.

17

57.     The Settlement Agreement and Consent Judgment and Permanent Injunction against PacDent, and the USPTO's refusal of PacDent trademark applications based on a likelihood of confusion with Mixpac's Colored Dome Mark and Mixpac Trade Dress are material facts that are highly relevant to the factual support for the conclusion of the Legal Analysis. PacDent intentionally did not disclose these material facts because they knew customers would be less likely to agree with PacDent's conclusion if they knew these facts, and would be more likely to buy PacDent's new mixing tips if they did not know these facts.

58.     The Legal Analysis, at paragraph 3.2. Comparison: PacDent's "iMix" mixing tip, tells customers that PacDent's design "averted all the key features of Mixpac's mark". In the next sentence, PacDent goes even further to tell customers that it filed a trademark application for this mark with Application Ser. No. 86/588,603. This statement of fact is false or misleading because PacDent fails to disclose that the US Trademark Office _refused_ Application Ser. No. 86/588,603 (the "'603 Application") on September 30, 2015 based on a likelihood of confusion with seven Colored Dome Mark and Mixpac Trade Dress Registrations owned by Sulzer Mixpac, specifically, Mixpac's Trademark Registration Nos. 3762232, 3762233, 3976379, 3976380, 3976381, 3976382, and 4051261. See Exhibit J.

59.     In fact, PacDent omits other highly material facts bearing on PacDent's infringement. PacDent filed several US trademark applications for its iMix mixing tips in addition to the '603 Application. PacDent does not disclose that these applications were all refused in September 2015 based on a likelihood of confusion with the seven Colored Dome Trademark Registrations owned by Sulzer Mixpac, specifically, Mixpac's Trademark Registration Nos. 3762232, 3762233, 3976379, 3976380, 3976381, 3976382, and 4051261. See Exhibit J.

60.     PacDent's Legal Analysis at paragraph 3.1., "Analysis of the '261 Trademark (Reg. No. 4051261 owned by Mixpac), directs customers to the "main points" of Mixpac's '261 Registration and then tells customers that PacDent's design "averted all the key features of Mixpac's mark."

61.     PacDent knew, at the time the Legal Analysis was distributed, that the US Trademark Office had refused registration of PacDent's '603 application, by stating:

> "Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 3762232, 3762233, 3976379, 3976380, 3976381, 3976382, and 4051261. Trademark Act Section 2(d), 15 U.S.C. §1052(d); see TMEP §§1207.01 et seq."

*See,* Exhibit J, September 30, 2015 Office Action issued against PacDent's US Trademark App. Ser. No. 86588603 at page 1 (citing Mixpac's Trademark Registration Nos. 3762232, 3762233, 3976379, 3976380, 3976381, 3976382, and 4051261).

62.     The PacDent Legal Analysis also ignores Mixpac's full patent and trademark rights that cover mixing tip products. Specifically, the PacDent Legal Analysis does not mention U.S. Trademark Reg. No. 4,674,109 (yellow), Reg. No. 4,879,515 (teal), Reg. No. 4,879,519 (blue), Reg. No. 4,879,517 (pink), Reg. No. 4,879,518 (purple), and Reg. No. 4,879,516 (brown) nor does it mention U.S. Patent No. 6,135,631. Instead, the PacDent Legal Analysis only selectively reviews three expired patents and some of Mixpac's mixing tip trademark registrations to falsely "[conclude] that the use of Pac-Dent's 'iMix' 'Alloy Hues' mixing tips do not infringe on any intellectual property rights of Sulzer Mixpac." See Exhibit C2, Section 7.

63.     In the alternative, the PacDent Legal Analysis is at least misleading.

64.     Customers in the dental industry research websites for product information. The PacDent Legal Analysis is part of PacDent's product advertising, and this

19

information is calculated to deceive and is likely to deceive relevant customers and prospective customers.

65.     Companies want to avoid product recalls and replacing counterfeit inventory. By falsely advertising that PacDent's product does not infringe any patents or trademarks, PacDent increases its chances that dental industry customers will purchase its products.

66.     PacDent placed the PacDent Legal Analysis into interstate commerce by providing it to customers and potential customers at least at the Greater New York Dental Meeting 2015, and elsewhere.

67.     PacDent concludes that its new mixing tip products do not infringe "any of the intellectual property rights of Sulzer Mixpac." This is false and misleading because PacDent provides false reasons for noninfringement, does not disclose the Settlement Agreement or the Consent Judgment and Permanent Injunction, and only selectively discusses some of Mixpac's patent and trademark rights.

68.     Accordingly, the statements in the PacDent Legal Analysis constitutes false advertising.

**PacDent's "Superior Mixing Performance" Establishment Claim**

69.     PacDent advertises that its mixing tips have "Superior Mixing Performance" compared to Mixpac's products ("Superior Mixing Claim"). See Exhibit C4, a true and correct copy of a screenshot of PacDent's website.

70.     PacDent bases its Superior Mixing Claim on testing results ("PacDent Testing Data"). See Exhibit C4, discussed below, showing images of mixed composition samples and cross sections of material in support.

**PacDent Superior Mixing Claim**



PacDent Testing Data

Mixpac Yellow Dome Mark

Mixed Composition Samples

Mixed Composition Samples Cut Open (Cross-Sections)

See Exhibit C4 (annotated).

69.     PacDent compares the "leading brand" with its iMix brand. PacDent uses an image of Mixpac's Yellow Dome Trademark making it clear that the "leading brand" is Mixpac. See Exhibit C4.

70.     Dental mixing tips are used to combine or mix two different components of a dental cartridge. It is desirable to completely mix the two components. Incomplete mixing can result in an unsuccessful dental procedure. Successful mixing tends to show a uniform color and incomplete mixing can show different colors or streaks.

**PacDent Testing Data**
**(Cross-Sections)**



See Exhibit C4.

71.     A picture is worth a thousand words. The PacDent Testing Data purports to show different colors and streaks in the sample mixed by Mixpac's mixing tips and a more uniform color result in the sample mixed by PacDent's mixing tips.

71.     The PacDent Superior Mixing Claim is false.

72.     PacDent provides very limited testing data to show PacDent's "superior mixing performance" while attacking the quality of Mixpac's products. PacDent's testing, as the stated support for its claim, is not sufficiently reliable to permit PacDent to conclude that the PacDent mixing tips have superior mixing performance compared to Mixpac mixing tips. The PacDent Superior Mixing Claim is deceptive or has the capacity to deceive, is material and has injured Mixpac by diverting sales from Mixpac to PacDent and by lessening the good will in Mixpac's mixing tips.

72.     The testing upon which PacDent bases its Superior Mixing Claim is not sufficiently reliable to allow one to conclude with reasonable certainty that PacDent has

established its claim that PacDent's mixing tip has superior mixing performance compared to Mixpac's mixing tips.

73. The PacDent Testing Data is unreliable for example, because the material samples on the left side do not appear to be the same samples "cut open" in the cross-sections to the right, which means that PacDent's testing was either faulty or manipulated. See Exhibit C4.



See PacDent Testing Data, Exhibit C4 (annotated).

74. Dental mixing tips mix liquid compositions from two component cartridges. There are hundreds of different dental compositions made by numerous dental component manufacturers. It is unclear under what environment the PacDent Testing Data was performed, and which composition was used and from which manufacturer.

75. Even if the PacDent Testing Data is reliable, it does not establish the proposition that the PacDent mixing tips have superior mixing performance compared to Mixpac mixing tips, and therefore, it is irrelevant. Selecting one comparison of one set of cross-sections is insufficient to provide   meaningful results proven with reasonable certainty.

76. The PacDent Testing Data cannot with any degree of confidence support that PacDent's mixing tips provide "superior mixing performance" compared to Mixpac's mixing tips.

77.     Alternatively, the PacDent Superior Mixing Claim is at least misleading. A single test of a single dental composition from a single manufacturer given the numerous different compositions with different properties as support for the statement that PacDent has "superior mixing performance" is misleading as it implies that PacDent mixing tips will be superior when used on any dental composition under all conditions.

78.     The PacDent Superior Mixing Claim is deceptive or has the capacity to deceive, is material and has injured Mixpac by diverting sales from Mixpac to PacDent and by lessening the goodwill in Mixpac's mixing tips.

79.     Customers and prospective customers in the dental industry research company websites for product information and comparison. The PacDent Superior Mixing Claim is material because it directly compares Mixpac's competing products on key features of mixing quality which is relied upon by dental industry customers. This information is highly likely to deceive customers.

80.     Dental industry customers seek quality mixing performance because incomplete mixing can cause a faulty dental procedure. The PacDent Superior Mixing Claim is likely to influence purchasing decisions.

81.     PacDent placed the PacDent Superior Mixing Claim in interstate commerce on PacDent's website and product information page. See Exhibit C4.

82.     Accordingly, the PacDent Superior Mixing Claim constitutes false advertising by PacDent.

**Mixpac's U.S. Patent Number 6,135,631**

83.     PacDent's mixing tips also infringe Mixpac's patent rights.

84.     On October 24, 2000, the United States Patent and Trademark Office duly and legally issued U.S. Patent Number 6,135,631 (the "'631 Patent"), entitled "Mixer For Multiple Component Dispensing Cartridge". A true and correct copy of the '631 Patent is attached as Exhibit K.

85.     Sulzer Mixpac AG is the sole owner and assignee of the '631 Patent and the '631 Patent has not lapsed and is currently in full force and effect.

86.     The '631 Patent discloses, among other things, an invention of:

"A mixer for a multiple component dispensing appliance having at least two storage cylinders, said mixer comprising:

a mixer housing; and

an inlet section, the inlet section having side by side separate inlets terminating at an end plate and adapted to be connected to the at least two storage cylinders;

the end plate having a top surface and a bottom surface and inlet openings for the components from the separate inlets to flow therethrough,

the mixer housing communicating with the inlet section and containing a mixer element group comprising a plurality of elements, the plurality of elements including a first mixer element having a dividing edge,

the dividing edge arranged parallel with the top surface and having a first end and a second end,

the side by side separate inlets arranged in line with the dividing edge, one each at the first and second ends and on the bottom surface of the end plate, and

the mixer housing having an internal face that is parallel with and faces the top surface of the end plate to define a merging chamber therebetween for forcing the

25

components to pre-mix within the chamber and to flow in a direction substantially

perpendicular to a longitudinal axis of the mixer and parallel to the top surface of

the end plate towards the dividing edge as the components flow through the inlet

openings in the end plate."

Claim 1 of the '631 Patent. See Exhibit K.

87.    PacDent has offered for sale, or delivered into this judicial district mixing

tips that infringe the '631 Patent. Specifically, the iMix Grip™ mixing tips (the "Accused

Products") include all the limitations of at least claim one of the '631 patent. See below

advertising of the Accused Products, and photos of the Accused Products compared to Fig. 1 of

the '631 Patent:



PacDent Advertising (See Exhibit C1)



Accused Product Image (Disassembled)



Image of Accused Product and Fig. 1 of the '631 Patent

88.     As a direct and proximate result of PacDent's conduct, Sulzer has been damaged in an amount to be determined at trial.

## COUNT I
### BREACH OF SETTLEMENT AGREEMENT AND
### ENFORCEMENT OF CONSENT JUDGMENT
### (All Defendants)

89.     Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 88 of its Complaint.

90.     Defendants entered into a Settlement Agreement with Mixpac which was a binding contract between the parties on March 15, 2011 in resolution of a patent and trademark infringement action brought by Mixpac for infringement of the Mixpac Colored Dome Mark and Mixpac Trade Dress. See Transcript of Civil Cause for Settlement Conference (March 15, 2011), attached as Exhibit B.

91.     Pursuant to the terms of the Settlement Agreement, Defendants agreed to the Consent Judgment entered by Hon. Deborah A. Batts on May 10, 2011 in *Sulzer Mixpac et al. v. Pure-Life Gloves, LLC*, Case No. 09 Civ. 10430, attached as Exhibit A.

92.     Pursuant to the terms of the Consent Judgment, Defendants are permanently enjoined from "selling, offering for sale, distributing or advertising in the United States any mixing tips that infringe U.S. Trademark Registration Nos. 3,762,233 or 3,762,232 or the Colored Dome Mark or Mixpac Trade Dress" which includes and encompasses the trademarks and trade dress reflected at least in Reg. No. 4,674,109 (yellow), Reg. No. 3,762,232 (yellow), Reg. No. 3,762,233 (teal), Reg. No. 3,976,379 (blue), Reg. No. 3,976,380 (pink), Reg. No. 3,976,381 (purple), Reg. No. 3,976,382 (brown), or Reg. No. 4,051,261 (dome mark - no color).

93.     Defendants are selling, offering for sale, distributing and advertising mixing tips that infringe U.S. Trademark Registration Nos. 3,762,233 or 3,762,232 or the Colored Dome Mark or Mixpac Trade Dress in violation of the May 10, 2011 Consent Judgment.

94.     Mixpac has performed all obligations under the Settlement Agreement and has not violated the Consent Judgment in any way.

95.     Defendants have breached the Settlement Agreement by engaging in further infringement of the Mixpac Colored Dome Mark or Mixpac Trade Dress, and by violating the Consent Judgment.

96.     Mixpac has been harmed by the foregoing breaches by Defendants.

97.     As a direct and proximate result of the foregoing breaches, Mixpac has suffered, and will continue to suffer, damages arising out of Defendants' ongoing infringement which cannot yet be fully ascertained.

98.     Defendants should be again enjoined from any further "selling, offering for sale, distributing or advertising in the United States any mixing tips that infringe U.S. Trademark Registration Nos. 3,762,233 or 3,762,232 or the Colored Dome Mark or Mixpac

Trade Dress," pursuant to the Settlement Agreement and Consent Judgment, and Mixpac should be awarded damages for Defendants' breach and past infringement.

**COUNT II**
**TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114**
**(All Defendants)**

99.     Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 98 of its Complaint.

100.     Defendants have advertised, offered for sale, distributed, or sold mixing tips which are spurious and which are identical with or are substantially indistinguishable from Mixpac's yellow or other color mixing tips as shown in the Colored Dome Trademark Registrations, Reg. No. 4,674,109 (yellow), Reg. No. 3,762,232 (yellow), Reg. No. 3,762,233 (teal), Reg. No. 3,976,379 (blue), Reg. No. 3,976,380 (pink), Reg. No. 3,976,381 (purple), Reg. No. 3,976,382 (brown); Reg. No. 4,674,109 (yellow), Reg. No. 4,879,515 (teal), Reg. No. 4,879,519 (blue), Reg. No. 4,879,517 (pink), Reg. No. 4,879,518 (purple), Reg. No. 4,879,516 (brown); and Reg. No. 4,051,261 (no color).

101.     Defendants' conduct is likely to cause confusion, to cause mistake, and to deceive as to Defendants' affiliation, connection, association, or sponsorship with Mixpac.

102.     Defendants' infringement is willful and with notice of Mixpac's trademark registrations.

103.     Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, statutory damages, damages, and attorney's fees and costs.

## COUNT III
## TRADEMARK INFRINGEMENT OF THE REGISTERED COLORED DOME MARK
## AND MIXPAC TRADE DRESS BY DEFENDANTS
## UNDER 15 U.S.C. §§ 1125(a) and 1114
### (All Defendants)

104.    Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 103 of its Complaint.

105.    Defendants adopted their trade dress for their mixing tips with knowledge of the Colored Dome Mark and Mixpac Trade Dress and Candy Colors.

106.    Defendants have misleadingly used, and continue to use, a confusingly similar trade dress to the Colored Dome Registrations, which is likely to cause confusion, to cause mistake, and to deceive as to Defendants' affiliation, connection, association, or sponsorship with Mixpac.

107.    Defendants' acts are calculated to deceive, or are likely to deceive, the public, which recognizes and associates the Colored Dome Mark and Mixpac Trade Dress with Mixpac. Moreover, Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive the public as to the source of Defendants' products, or as to a possible affiliation, connection with or sponsorship by Mixpac.

108.    Defendants' conduct has caused Mixpac to suffer and, unless enjoined by the court, will cause Mixpac to continue to suffer damage to its operation, reputation, and goodwill and will suffer the loss of sales and profits that Mixpac would have made but for Defendants' acts. Defendants have been, and will continue to be, unjustly enriched by their unlawful acts.

109.    Defendants' infringement is willful and with notice of Mixpac's trademark registrations.

110.    Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

**COUNT IV**
**TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a)**
**(All Defendants)**

111.    Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 110 of its complaint.

112.    Without limitation, Defendants have misused the MIXPAC trademark in their packaging and advertising.

113.    The PacDent Defendants have violated and, upon information and belief, intend to continue to willfully, knowingly, and intentionally violate 15 U.S.C. § 1125(a) by their unlawful acts in a manner that is likely to cause confusion, mistake or deceive as to the nature, characteristics, or qualities of their goods, services, or commercial activities.

114.    The PacDent Defendants' conduct has caused Mixpac to suffer irreparable harm and, unless enjoined by the court, will cause Mixpac to continue to suffer damage to its operation, reputation, and goodwill, and will suffer the loss of sales and profits that Mixpac would have made but for the PacDent Defendants' acts. The PacDent Defendants have been, and will continue to be, unjustly enriched by their unlawful acts.

115.    Mixpac has no adequate remedy at law. The PacDent Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to Mixpac. As a result of the PacDent Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, the PacDent Defendants' profits, damages, and attorney's fees and costs.

31

## COUNT V

### FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)
### (All Defendants)

116.    Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 115 of its Complaint.

117.    In connection with Defendants' mixing tips and in commercial advertising or promotion, Defendants have made and placed in interstate commerce false or misleading descriptions of fact and false or misleading representations of fact that misrepresent the nature, characteristics, or qualities of Defendants' mixing tips or Mixpac's mixing tips, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1) (B).

118.    Defendants' false or misleading advertising of Defendants' mixing tips have caused and, unless enjoined, will continue to cause: (a) confusion, deception, and mistake among the dental trade whose purchasing decisions are likely to be affected by Defendants' false and misleading claims about the true nature, characteristics, and qualities of their products including non-infringement; (b) Mixpac to suffer loss of goodwill, sales, and profits; (c) Defendants to unfairly enjoy sales and profits to which they are not entitled; and (d) irreparable harm to Mixpac.

119.    Defendants false or misleading statements include, but are not limited to, representations that Defendants new mixing tips do not infringe upon the rights of Sulzer Mixpac AG. See Exhibits C1, C2, and C4.

120.    Defendants do not disclose several material facts related to their product claims including, but not limited to: 1) the permanent injunction against sales of infringing mixing tips (Exhibit A), 2) the settlement agreement between the parties (Exhibit B), 3) the United States Patent and Trademark Office's refusal of the PacDent Trademark Application Ser.

No. 86588603 (the '603 Application is specifically listed in PacDent's advertising)(see Exhibit J), and 4) the United States Patent and Trademark Office's refusal of registration of seven PacDent trademark applications for mixing tip designs based on a likelihood of confusion with Mixpac's Colored Dome Mark and Mixpac Trade Dress. See Exhibit J.

121.    Defendants' false and misleading descriptions or representations of fact have misled customers and others in the dental trade. PacDent intentionally made false statements and did not disclose material facts relating to the website and Legal Analysis because it knew customers would be less likely to agree with PacDent's conclusion if they knew these facts, and would be more likely to buy PacDent's new mixing tips if they did not know these facts.

122.    PacDent based the PacDent Superior Mixing Claim on the PacDent Testing Data which is not sufficiently reliable to permit any claim of superiority. Further, even if the tests were reliable as shown, these results do not establish PacDent's proposition and therefore, are irrelevant.   Accordingly, the PacDent Superior Mixing Claim is false or misleading.

123.    PacDent has made false or misleading statements of fact which are material and likely to influence the purchasing decisions of buyers in the dental trade to switch from Mixpac to PacDent, and such statements were calculated to and have injured Mixpac by diverting sales from Mixpac to PacDent and have caused a loss of goodwill in Mixpac's products.

124.    By its conduct in violation of the Lanham Act, Defendants have unfairly competed with Mixpac and continues to compete unfairly with Mixpac.

125. Defendants have willfully and deliberately violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), warranting an award of treble damages and attorney's fees under 15 U.S.C. § 1117(a) as this is an exceptional case.

126. Defendants have willfully committed acts of false advertising with knowledge and with notice of Mixpac's trademark rights.

127. Mixpac has no adequate remedy at law for Defendants' continuing acts of false advertising.

**COUNT VI**
**FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)**
**(All Defendants)**

128. Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 127 of its Complaint.

129. Defendants' mixing tips use the Colored Dome Mark and Mixpac Trade Dress in such a way as to unfairly compete in the marketplace by drawing a false association between Defendants' products and Mixpac.

130. Defendants have made false designations of origin and false or misleading descriptions or representations of fact in commercial advertising or promotion which misrepresent the nature, characteristics, qualities, sponsorship, or association with another person's goods, services, or commercial activities in violation of 15 U.S.C. § 1125(a).

131. Defendants have violated and, upon information and belief, intend to continue to willfully, knowingly, and intentionally violate 15 U.S.C. § 1125(a) by their unlawful acts in a manner that is likely to cause confusion, mistake or deceive as to the nature, characteristics, or qualities of their goods, services, or commercial activities.

132.    Defendants' conduct has caused Mixpac to suffer irreparable harm and, unless enjoined by the court, will cause Mixpac to continue to suffer damage to its operation, reputation, and goodwill, and will suffer the loss of sales and profits that Mixpac would have made but for Defendants' acts. Defendants have been, and will continue to be, unjustly enriched by their unlawful acts.

133.    Defendants have willfully made false designations of origin with knowledge and with notice of Mixpac's trademark rights.

134.    Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

### COUNT VII
### VIOLATION OF N.Y. GEN. BUS. LAW § 349
### (All Defendants)

135.    Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 134 of its Complaint.

136.    Defendants' acts, including the unauthorized manufacture and distribution of its mixing tips, constitute a violation of General Business Law § 349 because they are likely to cause confusion or mistake, or deceive consumers into thinking that Defendants' and Mixpac's products emanate from the same source. The public has an interest in being able to correctly identify the source of the Mixpac products.

137.    Defendants willfully engaged in one or more deceptive trade practices.

138.    Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to endanger consumers of dental products or services and

cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

## COUNT VIII

### VIOLATION OF N.Y. GEN. BUS. LAW § 350
### (All Defendants)

139.   Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 138 of its Complaint.

140.   Defendants' acts violate General Business Law § 350 because, by offering copies of Mixpac's products, they falsely represent to consumers and professionals that their products are somehow associated or affiliated with, sponsored, or endorsed by Mixpac.

141.   Defendants' acts and misrepresentations are likely to cause confusion, mistake, or deception as to the source of their products and services.

142.   Should Defendants' misrepresentations continue, it will produce an irreparable injury to Mixpac because it allows Defendants to trade off Mixpac's goodwill and unfairly and improperly market their goods through Defendants' misleading statements.

143.   Defendants have willfully made false representations with knowledge and with notice of Mixpac's trademark rights.

144.   Defendants' acts have caused, and continue to cause, irreparable harm to Mixpac. Unless this court enjoins Defendants from continuing its unauthorized acts, Mixpac will continue to suffer irreparable harm. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

### COUNT IX
### COMMON LAW TRADEMARK INFRINGEMENT
### (All Defendants)

36

145.    Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 144 of its Complaint.

146.    Defendants adopted the look of their mixing tips with knowledge of the Colored Dome Mark and Mixpac Trade Dress.

147.    Defendants have misleadingly used, and continue to use, a confusingly similar trade dress to the Colored Dome Mark and Mixpac Trade Dress that is likely to cause confusion, to cause mistake, and to deceive as to Defendants' affiliation, connection, association, or sponsorship with Mixpac.

148.    Defendants' acts are calculated to deceive, or are likely to deceive, the public, which recognizes and associates the Colored Dome Mark and Mixpac Trade Dress with Mixpac. Moreover, Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive the public as to the source of Defendants' products, or as to a possible affiliation, connection with, or sponsorship by Mixpac.

149.    Defendants have willfully infringed with knowledge and with notice of Mixpac's trademark rights.

150.    Defendants' acts have caused, and continue to cause, irreparable harm to Mixpac. Unless this court enjoins Defendants from continuing its unauthorized acts, Mixpac will continue to suffer irreparable harm. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

**COUNT X**
**COMMON LAW UNFAIR COMPETITION**
**(All Defendants)**

151.    Mixpac realleges and incorporates by reference the allegations in paragraphs 1 through 150 of its Complaint.

152.    Defendants' acts constitute unfair competition under common law.

153.    Defendants adopted their trade dress in bad faith as they knowingly, willfully, and intentionally copied the shape and colors of Mixpac's product to trade off Mixpac's labor, expenditures, and goodwill.

154.    Defendants' mixing tips utilize the Colored Dome Mark and Mixpac Trade Dress in such a way as to unfairly compete in the marketplace by drawing a false association between Defendants' products and Mixpac.

155.    Defendants have made false designations of origin and false or misleading descriptions or representations of fact in commercial advertising or promotion which misrepresent the nature, characteristics, or qualities of another person's goods, services, or commercial activities.

156.    Defendants' conduct has caused Mixpac to suffer irreparable harm and, unless enjoined by the court, will cause Mixpac to continue to suffer damage to its operation, reputation, and goodwill and will suffer the loss of sales and profits that Mixpac would have made but for Defendants' acts. Defendants have been, and will continue to be, unjustly enriched by their unlawful acts.

157.    Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

**COUNT XI**
**PATENT INFRINGEMENT OF U.S. PATENT NO. 6,135,631**
**UNDER 35 U.S.C. § 271**
**(All Defendants)**

158.    Mixpac realleges and incorporates herein by reference the allegations in paragraphs 1 through 157 of its Complaint.

159.    Defendants make, use, sell, offer to sell, or import the Accused Products which infringe at least claim 1 of the '631 Patent. The PacDent iMix™ Grip™ dental mixing tips include all of the limitations of at least claim 1, specifically, "mixer[s] for a multiple component dispensing appliance having at least two storage cylinders, said mixer comprising: a mixer housing; and an inlet section, the inlet section having side by side separate inlets terminating at an end plate and adapted to be connected to the at least two storage cylinders; the end plate having a top surface and a bottom surface and inlet openings for the components from the separate inlets to flow therethrough, the mixer housing communicating with the inlet section and containing a mixer element group comprising a plurality of elements, the plurality of elements including a first mixer element having a dividing edge, the dividing edge arranged parallel with the top surface and having a first end and a second end, the side by side separate inlets arranged in line with the dividing edge, one each at the first and second ends and on the bottom surface of the end plate, and the mixer housing having an internal face that is parallel with and faces the top surface of the end plate to define a merging chamber therebetween for forcing the components to pre-mix within the chamber and to flow in a direction substantially perpendicular to a longitudinal axis of the mixer and parallel to the top surface of the end plate towards the dividing edge as the components flow through the inlet openings in the end plate." See Exhibit K.

160.    In violation of 35 U.S.C. § 271, Defendants have directly infringed, and continue to directly infringe, literally, or under the doctrine of equivalents, at least claim 1 of the '631 Patent by making, using, offering for sale, selling, or importing the Accused Products, in

this judicial district and elsewhere in the United States without authority from Mixpac during the term of the '631 Patent.

161.    Defendants will not stop using, selling, and/or offering for sale the Accused Products to avoid infringing the '631 Patent.

162.    Defendants' conduct has caused Mixpac to suffer and, unless enjoined by the court, will cause Plaintiff to continue to suffer damage to their operation, reputation, and goodwill.

163.    Mixpac has no adequate remedy at law. Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to Mixpac. As a result of Defendants' wrongful conduct, Mixpac is entitled to injunctive relief, Defendants' profits, damages, and attorney's fees and costs.

## RELIEF REQUESTED

Wherefore, Mixpac requests that the court enter a judgment in Mixpac's favor and against Defendants and provide Mixpac the following relief:

A.    Order, adjudge, and decree that Defendants have violated the Consent Judgment and Permanent Injunction by infringing the Mixpac Colored Dome Mark and Mixpac Trade Dress under 15 U.S.C. §§ 1114, 1125(a);

B.    Order, adjudge, and decree that Defendants have violated the Settlement Agreement by not honoring the Consent Judgment and Permanent Injunction;

C.    Order, adjudge, and decree that Defendants have infringed the Mixpac Colored Dome Mark and Mixpac Trade Dress under 15 U.S.C. §§ 1114, 1125(a);

D.    Order, adjudge, and decree that Defendants have committed trademark infringement including but not limited to trademark counterfeiting of U.S. Trademark Reg. No.

40

3,762,232 (yellow), Reg. No. 3,762,233 and (teal), Reg. No. 3,976,379 (blue), Reg. No. 3,976,380 (pink), Reg. No. 3,976,381 (purple), Reg. No. 3,976,382 (brown); U.S. Trademark Reg. No. 4,674,109 (yellow), Reg. No. 4,879,515 (teal), Reg. No. 4,879,519 (blue), Reg. No. 4,879,517 (pink), Reg. No. 4,879,518 (purple), Reg. No. 4,879,516 (brown); and Reg. No. 4,051,261 (no color) under 15 U.S.C. § 1114;

E.     Order, adjudge, and decree that PacDent committed false advertising on its website and by distributing the Legal Analysis, and that PacDent shall issue corrective advertising that explains the false or misleading statements;

F.     Issue preliminary and permanent injunctive relief prohibiting Defendants and their respective parents, subsidiaries, principals, officers, agents, affiliates, servants, attorneys, employees, and all others in privity with them from using any trademark or trade dress which is likely to be confused with the Colored Dome Mark and Mixpac Trade Dress, and/or the Candy Colors and from committing false advertising;

G.     Order Defendants to identify and recall from customers and destroy all infringing materials, including but not limited to all false advertising and packaging and advertising incorporating the infringing trade dress or any other trade dress confusingly similar to the Colored Dome Mark and Mixpac Trade Dress, Candy Colors;

H.     Award Mixpac damages for trademark infringement including prejudgment interest and costs against Defendants under 15 U.S.C. § 1117;

I.     Award Mixpac three times its damages to compensate Mixpac under 15 U.S.C. § 1117;

J.     Award Mixpac its reasonable attorney's fees under 15 U.S.C. § 1117;

K.    Award Mixpac statutory damages for trademark counterfeiting pursuant to 15 U.S.C. § 1117;

L.    Order, adjudge, and decree that Defendants have infringed the '631 Patent under 35 U.S.C. § 281;

M.    Order, adjudge, and decree that Defendants willfully and knowingly infringed the '631 Patent;

N.    Order, adjudge, and decree that Defendants' infringement of the '631 Patent is exceptional under 35 U.S.C. § 285;

O.    Award Mixpac damages for patent infringement including prejudgment interest and costs against Defendants;

P.    Award Mixpac three times its damages to compensate Plaintiff under 35 U.S.C. 284;

Q.    Award Mixpac its reasonable attorney's fees under 35 U.S.C. § 285.Issue a preliminary and permanent injunctive relief prohibiting Defendants and their respective parents, subsidiaries, principals, officers, agents, affiliates, servants, attorneys, employees, and all others in privity with them from infringing the '631 Patent; and

R.    Award such other and further relief as the court may deem just.

Dated: New York, New York
       June 27, 2016

Charles D. Cole, Jr.
Newman Myers Kreines Gross Harris, P.C.
40 Wall Street
New York, New York 10005-1335
(212) 619-4350
dcole@nmkgh.com

-and-

Michael T. Murphy
Daniel Hwang
Global IP Counselors, LLP
1233 Twentieth Street NW, Suite 600
Washington, D.C. 20036
(202) 293-0585
mmurphy@giplaw.com
Attorneys for Sulzer Mixpac AG